**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 23 cr – 80104 – RLR/BER

UNITED STATES OF AMERICA,

v.

HAROLD SERENOT,

        Defendant.

_____/

**PLEA AGREEMENT**

     The United States Attorney's Office for the Southern District of Florida ("this Office") and

HAROLD SERENOT (hereinafter referred to as the "defendant") enter into the following

agreement:

     1.    The defendant agrees to plead guilty to Count 1 of the Indictment, which charges

the defendant with Conspiracy to Commit Wire Fraud, in violation of Title 18, United States Code,

Section 1349.

     2.    This Office agrees to seek dismissal of the remaining counts in the Indictment after

sentencing, as to this defendant.

     3.    The defendant is aware that the sentence will be imposed by the Court after

considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter

"Sentencing Guidelines").  The defendant acknowledges and understands that the Court will

compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines

will be determined by the Court relying in part on the results of a pre-sentence investigation by the

Court's probation office, which investigation will commence after the guilty plea has been entered.

The defendant is also aware that, under certain circumstances, the Court may depart from the

advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines.   The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense(s) identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4.      The defendant also understands and acknowledges that, as to Count 1, the Court may impose a statutory maximum term of imprisonment of up to twenty (20) years, followed by a term of supervised release of up to three (3) years.   In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $250,000 or twice the gross gain or gross loss resulting from the offense.   The Court also must impose restitution and criminal forfeiture.

5.      The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 4 of this Agreement, a special assessment in the amount of $100 will be imposed on the defendant for each count of conviction.   The defendant agrees that any special assessment imposed shall be paid at the time of sentencing.

6.      This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offense(s) committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing

recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

7.       This Office and the defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings as to the guideline calculations:

a.       <u>Base Offense Level:</u>   the parties agree that pursuant to Sentencing Guideline §2B1.1(a)(1), the appropriate base offense level is seven (7).

b.       <u>Loss Amount:</u>   the parties agree that pursuant to Sentencing Guideline §2B1.1(b)(1)(K), the relevant loss amount resulting from the defendant's participation in the offense is $41,666.00.

<u>The parties remain free to argue for sentencing variances under 18 U.S.C. § 3553(a).</u>

8.       This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility.   If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.   This Office, however, will not be required to make this motion and this recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances

surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

9.     The defendant agrees to cooperate fully with this Office by: (a) providing truthful and complete information and testimony, and producing documents, records and other evidence, when called upon by this Office, whether in interviews, before a grand jury, or at any trial or other Court proceeding; (b) appearing at such grand jury proceedings, hearings, trials, and other judicial proceedings, and at meetings, as may be required by this Office; and (c) if requested by this Office, working in an undercover role under the supervision of, and in compliance with, law enforcement officers and agents.  In addition, the defendant agrees that the defendant will not protect any person or entity through false information or omission, that the defendant will not falsely implicate any person or entity, and that the defendant will not commit any further crimes.

10.     This Office reserves the right to evaluate the nature and extent of the defendant's cooperation and to make that cooperation, or lack thereof, known to the Court at the time of sentencing.   If, in the sole and unreviewable judgment of this Office, the defendant's cooperation is of such quality and significance to the investigation or prosecution of other criminal matters as to warrant the Court's downward departure from the advisory sentencing range calculated under the Sentencing Guidelines and/or any applicable minimum mandatory sentence, this Office may make a motion prior to sentencing pursuant to Section 5K1.1 of the Sentencing Guidelines and/or Title 18, United States Code, Section 3553(e), or subsequent to sentencing pursuant to Rule 35 of the Federal Rules of Criminal Procedure, informing the Court that the defendant has provided

substantial assistance and recommending that the defendant's sentence be reduced. The defendant understands and agrees, however, that nothing in this agreement requires this Office to file any such motions, and that this Office's assessment of the quality and significance of the defendant's cooperation shall be binding as it relates to the appropriateness of this Office's filing or non-filing of a motion to reduce sentence.

11.     The defendant understands and acknowledges that the Court is under no obligation to grant a motion for reduction of sentence filed by this Office.   In addition, the defendant further understands and acknowledges that the Court is under no obligation of any type to reduce the defendant's sentence because of the defendant's cooperation.

12.     The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court.   The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety.   The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw the plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

13.     Defendant agrees to consent to any regulatory action taken by a Federal financial institution regulatory agency to permanently remove defendant from office and/or prohibit defendant from participating, whether as an institution-affiliated party or otherwise, in the conduct

of the affairs of any insured depository institution or depository institution holding company, or any other organization or entity provided in Section 8(e) of the Federal Deposit Insurance Act, 12 U.S.C. § 1818(e).

14.     The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any property, real or personal, which constitutes or is derived from, proceeds obtained directly or indirectly, as a result of such offense, pursuant to Title 18, United States Code, Section 982(a)(2).  In addition, the defendant agrees to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p).  The defendant agrees that the value of the property subject to forfeiture is $41,666.00 in U.S. currency, and therefore also agrees to the entry of a forfeiture money judgment in that amount.

15.     The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. Rs. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

16.     The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offense of conviction.  The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture.   This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title,

consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

17.     The defendant further understands that providing false or incomplete information about assets, concealing assets, making materially false statements or representations, or making or using false writings or documents pertaining to assets, taking any action that would impede the forfeiture of assets, or failing to cooperate fully in the investigation and identification of assets may be used as a basis for: (i) separate prosecution, including, under 18 U.S.C. § 1001; or (ii) recommendation of a denial of a reduction for acceptance of responsibility pursuant to the United States Sentencing Guidelines § 3E1.1.

18.     The defendant understands and acknowledges that the Court must order restitution for the full amount of a victim's losses pursuant to 18 U.S.C. § 3663A.  Defendant understands that the amount of restitution owed to a victim will be determined at or before sentencing unless the Court orders otherwise.  This Office and the defendant stipulate and agree that the amount of restitution that the defendant shall pay is $41,666.00 in United States currency.

19.     The defendant confirms that the defendant is guilty of the offense to which the defendant is pleading guilty; that the defendant's decision to plead guilty is the decision that the defendant has made; and that nobody has forced, threatened, or coerced the defendant into pleading guilty. The defendant affirms that the defendant has reviewed this agreement and enters into it knowingly, voluntarily, and intelligently, and with the benefit of assistance by the defendant's attorney.

20.    This is the entire agreement and understanding between this Office and the

defendant.   There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

DATE:  9/16/23

BY: _____
SHANNON SHAW
ASSISTANT U.S. ATTORNEY

DATE:  8/16/23

BY: _____
RICHARD MERLINO    0977640
ATTORNEY FOR DEFENDANT

DATE:  8/16/2023

BY: _____
HAROLD SERENOT
DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CR-80104-RLR/BER

UNITED STATES OF AMERICA,

v.

HAROLD SERENOT,

Defendant.
_____/

## FACTUAL PROFFER

The United States and Defendant HAROLD SERENOT ("Defendant" or "Serenot") agree that had this case gone to trial, the Government would have proved the following facts, among others, beyond a reasonable doubt, and that these facts are true and correct and establish Defendant's guilt of the charged offense.

### The Paycheck Protection Program

The Coronavirus Aid, Relief, and Economic Security (CARES) Act was a federal law enacted in March 2020, to provide financial assistance to Americans suffering economic harm from the COVID-19 pandemic. One source of relief provided through the CARES Act was the authorization of forgivable loans to businesses for job retention and certain other expenses, through a program called the Paycheck Protection Program (PPP).

The PPP allowed qualifying small businesses and other organizations to receive PPP loans. Businesses were required to use PPP loan proceeds on payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and

Page 1 of 5

used a certain percentage of the PPP loan proceeds on payroll expenses.   The amount of a PPP loan that a small business was entitled to receive was determined by the number of employees employed by the business and the business's average monthly payroll costs.

To obtain a PPP loan, a qualifying business was required to submit a PPP loan application which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan. In the PPP loan application, the small business (through its authorized representative) was required to state, among other things, its average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. In addition, businesses applying for a PPP loan were required to provide documentation confirming their payroll expenses.

A PPP loan application was processed by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own funds. While a participating lender issued the PPP loan, the loan was 100% guaranteed by the United States Small Business Administration ("SBA"), an executive branch agency of the United States government.

Harvest Small Business Finance, LLC ("Harvest") was a corporation that was headquartered in Laguna Hills, California.   Harvest was an approved SBA lender of PPP loans.

### The Offense

Serenot was a resident of Palm Beach County, Florida.   Serenot learned about PPP funds and decided he wanted to receive some of these funds.   He discussed the matter with his girlfriend and co-defendant, Jacqueline Molina ("Molina").   Molina reached out to E.D., a friend of hers

whom she believed would know how to do PPP loans.   E.D. told her that he knew an accountant who could help her.   He asked her to provide the name, social security number, date of birth, bank statements, and driver license of anyone who wanted a loan.   The accountant would then do all the paperwork – applying for a first and second draw PPP loan and applying for loan forgiveness. The price for this service would be 20% of the loan proceeds for the first draw and 20% of the proceeds for the second draw.   This accountant, who ultimately would help Serenot, Molina and numerous others fraudulently obtain PPP loans, was co-defendant Anitho Rene ("Rene").

Serenot provided all requested information to Molina, who then provided it to Rene.   Rene prepared all the documents for submission.   On or about March 22, 2021, from his office in Palm Beach County, Florida, Rene submitted a PPP loan application on behalf of Serenot seeking a PPP loan in the amount of approximately $20,833.00 for Serenot's purported sole proprietorship.   The electronic transmission of this loan application caused a wire transmission from the Southern District of Florida to outside the State of Florida.

In the PPP application, Rene and Serenot falsely represented that Serenot's sole proprietorship had an average monthly payroll of approximately $8333.33.   The application also represented that the defendant's business was established on January 1, 2016, and that the NAICS Code for the business was 812111, which is intended for "barber shops."   The defendant did not have a barbershop, nor establish any other type of sole proprietorship on January 1, 2016. Furthermore, attached to the defendant's application was a fabricated Schedule C tax document.

As a result of the false and fraudulent PPP application, Harvest approved and funded the PPP loan for Serenot.   On or about April 8, 2021, Harvest transferred approximately $20,833.00 to a bank account controlled by Serenot.   This transfer occurred through an interstate wire from

Harvest's servers in California to the defendant's bank account in Florida.

Serenot and Rene subsequently engaged in this scheme for a second time.   On or about April 14, 2021, they submitted a "second draw" PPP loan application for the same sole proprietorship with the same representations and seeking the same loan amount.   Again, based on the false and fraudulent representations in the application, Harvest approved and funded the PPP loan for Serenot.   On or about April 22, 2021, Harvest transferred approximately $20,833.00 to a bank account controlled by Serenot.   This transfer occurred through an interstate wire from Harvest's servers in California to the defendant's bank account in Florida.

Serenot and his co-conspirators spent the loan proceeds for their personal use and benefit, not for payroll costs, interest on mortgages, rent, or utilities.   The defendant knew at the time he engaged in the scheme that his conduct was wrong and unlawful.   Rene and Serenot later applied for forgiveness of the PPP loan, which was approved.   Serenot never repaid any portion of the $41,666.00 in funds received.

*Space intentionally left blank*

The foregoing facts do not describe all the facts known to the Government in this matter, or fully describe all of the acts the Defendant and his co-conspirators engaged in, but are offered for the limited purpose of establishing a sufficient factual basis to support the Defendant's plea of guilty to the charge of conspiracy to commit wire fraud.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

DATE: _9/16/23_          BY: _____
                         SHANNON SHAW
                         ASSISTANT U.S. ATTORNEY

DATE: _8/16/23_          BY: _____
                         RICHARD MERLINO  097764
                         ATTORNEY FOR DEFENDANT

DATE: _8/16/2023_        BY: _____
                         HAROLD SERENOT
                         DEFENDANT